## COURT OF APPEALS.

THE PEOPLE *ex rel.* THE PARKER MILLS, appellants agt. THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY OF NEW YORK, respondents.

Manufacturing corporations of *another state,* who send a portion of their products to this state for market and sale merely, cannot be *taxed* on such property, although they have a store hired and an agent here for the purposes of sale.

The statute of 1855 does not apply to such a case, for the reason that there is no sum invested or used for the purpose of carrying on a *continuous* business in this state.

THIS is an appeal from a judgment rendered by the supreme court in the first district, in the month of May, 1860, dismissing the *certiorari* issued in this matter to the commissioners of taxes and assessments for the city of New York, and affirming the action of said commissioners in assessing the personal property of the appellants for the purpose of taxation.

The petition is presented under the law of 1859, in relation to the assessment and taxation of property in the city of New York.

The law provides that the " tax commissioners shall assess," &c., (§ 10.)

If any person feels aggrieved by the action of the com-

missioners, he shall appear before them, submit to examination, &c., and the commissioners shall decide upon the application. If the applicant shall be dissatisfied with the decision, he may apply to a justice of the supreme court for a *certiorari*, requiring the commissioners to certify the proceedings before them to the supreme court. (§ 20.)

In February, 1855, the legislature passed a law, of which a copy is as follows :

§.1. " All persons and associations doing business in the state of New York, as merchants, bankers, or otherwise, either as principals or partners, whether special or otherwise, and not residents of this state, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of this state, and said taxes shall be collected from the property of the firms, persons, or associations to which they severally belong."

The Parker Mills is a corporation created by an act of the legislature of the state of Massachusetts ; the said corporation carries on the business of manufacturing nails in the states of Massachusetts and Rhode Island ; the whole amount of the capital of said corporation is invested in the said states, and the nails manufactured by said corporation are there entirely completed and packed for market ; none of the capital of said corporation is invested in the state of New York, and no manufacturing is done by said corporation within the state of New York, but said corporation has a depot in the city of New York, where productions of their manufactories in Massachusetts and Rhode Island are received and sold, the proceeds of which are immediately sent to the said Parker Mills, in Massachusetts.

In 1859, the commissioners of taxes and assessments for the city of New York assessed the personal property of the corporation, " The Parker Mills," for taxation at $25,000, although the corporation was located in Massachusetts, and had its entire capital invested there.

After the examination of the agent of the corporation,

the sum assessed was reduced to $10,000, and the tax levied upon that sum is $179.21.

On the 28th day of November, the appellants obtained a writ of *certiorari*, requiring the respondents to send to the supreme court for the first district their proceedings in said matter, and the record of their decision therein, with all things touching the same.

To this *certiorari* the respondents made a return, stating that they reviewed such assessment, and reduced the same to the sum of $10,000, and found, as matter of fact, that the appellants were not residents of this state, and that they were conducting business in said city of New York, and were liable to taxation, &c.

EDWARD C. DELAVAN, *for appellants.*

FIRST.—The act of 1855 was passed to correct an abuse of the rule, that personal property should be taxed at the place of residence or domicil of its owner.

The object was to impose a tax upon capital actually and permanently invested in business in this state, although its owner resided in another state.

It did not contemplate taxing capital which is in another state. Such was not its object.

Although it is true that all property within the state is protected by its laws, and should contribute to its maintenance, yet there are exceptions to this rule or reasons of policy why it should not in every instance be applied; as where persons are temporarily within the state, having their property with them; or for the purpose of encouraging trade.

SECOND.—They have no capital invested in business in the state of New York.

The entire capital is invested in manufacturing property in the states of Massachusetts and Rhode Island. It is permanently out of New York.

That which comes within the state of New York is simply a production to be sold, and the proceeds immediately sent out of the state; no part of them remain for re-investment.

A " sum invested in business" is that which is the basis of a permanent business ; it is re-invested and converted in the same place within the state.

All cases on this subject which have been under the cognizance of the courts have dealt with *capital* as being the " sum invested." (28 *Barb.*, *p.* 318 ; 17 *How. Pr. R.*, 201.)

That which the appellants send to the city of New York for sale, is not to be " invested" there ; and is *not so invested;* it is sent simply to find a market, and when the market is found, its proceeds are sent out of the state.

That upon which the commissioners laid the assessment may have gone from the state before the assessment was actually made. It could not have been reached to pay its own tax.

THIRD.—The productions so consigned are exempt by statute.

" The products of any state in the United States, consigned to agents, in any town or ward in the state, for sale on commission for the benefit of the owner thereof, shall not be assessed to such agents." (2 *R. S.*, 1*st ed.*, *p.* 389.)

FOURTH.—The commissioners of taxes, &c. of New York, are to assess the value of personal property subject to taxation. (*Laws* 1859, *p.* 680, § 7.)

There is no power to act in cases where there is no taxable property within their jurisdiction.

" Capital subject to taxation is that fund upon which the corporation transacts its business." (4 *Comst.*, *p.* 448.)

RICHARD MOTT, *for respondents,*

SELDEN, J. This case depends upon the construction to be given to the act of February 27th, 1855, amendatory of the several acts for the assessment and collection of taxes

in this state. Section 1 of that act is as follows : " All persons and associations doing business in the state of New York as merchants, bankers or otherwise, either as principals or partners, whether special or otherwise, and not residents of this state, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of this state; and said taxes shall be collected from the property of the firms, persons and associations to which they severally belong."

I have no doubt, and shall therefore assume, that the words " persons and associations," used in this statute, should be construed to include corporations ; but the words " descriptive of the property in respect to which they are to be assessed," are among the most indefinite in the language. The word " business" embraces everything about which a person can be employed ; and a sum is *invested*, whenever its amount is represented by anything but money. No conclusion can be arrived at in this case by following out the precise lexicographical meaning of these terms. The statute is to be interpreted, therefore, by the light to be obtained from its general scope and tenor, from other statutes *in pari materia*, and from a consideration of the evils and abuses at which it was aimed.

It was not uncommon previous to the passage of the act, as the history of our legislature shows, for foreign corporations, particularly insurance companies, to establish agencies in the city of New York, and perhaps elsewhere in this state, for the transaction of their corporate business. These agencies were protected by our laws, and carried on a profitable business within this state, and yet contributed nothing towards the expenses of government. They came in direct competition with domestic corporations, which were heavily taxed. It was certainly just and right that they, or the corporations by which they were established, should be made to contribute, to some extent, to the public burdens, But there was also another

class of cases which called for special legislation, and which the legislature had probably more directly in view in passing the act of 1855. Many persons engaged in business in the city of New York as partners of commercial firms or otherwise, resided in New Jersey, Connecticut, or elsewhere out of this state. These persons frequently had large amounts of property in this state, and enjoyed the fruits of a profitable business, carried on under the protection of our laws, and yet by reason of the rule that personal property is deemed to follow the person of the owner, they escaped taxation in respect to this property, at least in this state, and probably in most cases altogether.

There is no doubt, that to provide for these two classes of cases, especially the last, was the main object of the act of 1855. That it was never intended to include a case like the present, seems to me clear. In the two classes of cases referred to, the investment of funds by the non-resident has more or less of permanency. It is not the mere transit of property through the state, for the purpose of a market, but the funds are used for the prosecution of a *continuous* business. Taxes are levied, for the most part, annually. They are the consideration which property holders pay for the protection which the government and laws afford to them and their property *for the year.* But if the commissioners in this case are right; if the property is caught within this state for a day, while the assessors are engaged in the performance of their duties, its owners may be as heavily taxed as if it had been here throughout the entire year.

It is difficult to see any difference in principle between the present case and that of a drover who transports his herds of cattle by railroad to the city of New York, for sale, and yet I apprehend no one ever supposed the owner of the cattle, if a non-resident, to be taxable in such a case. It may be said that the Parker Mills had a store and an agent in the city of New York; so the drover may hire a

field or a yard for keeping his cattle, and his herdsman to take care of them. The cases are, I think, parallel; and the reason why the statute does not apply to either, is, that there is no sum invested or used for the purpose of carrying on a *continuous* business in this state.

.That it never was the policy of the state to impose taxes upon property sent into the state for the mere purpose of sale, is shown by the course of legislation on this subject. The general tax law provides (1 *R. S.,* 389, § 5) that every person shall be assessed in the town or ward where he resides, for all personal estate in his possession, or under his control as trustee, guardian, executor, &c. But by the amendatory act of April 15th, 1851, (*Sess. Laws of* 1851, *ch.* 176,) agents are added to the class of persons named in the previous statute; but lest the clause with this addition should be construed more broadly than the legislature intended, it was further provided that " the products of any state of the United States consigned to any agents in any town or ward in this state, for sale, on commission, for the benefit of the owner thereof, shall not be assessed to such agents."

The present case does not come strictly within the *terms* of this exception. The word " products," as here used, means, as I suppose, the natural agricultural products of the country; but I can see no distinction in principle between the present case and the case excepted. In both, the commodity is produced and owned in other states, and is brought temporarily into this state for the mere purpose of a market. Every reason which would lead to exemption from taxation in one case, applies, as I conceive, equally to the other. The exemption is to be considered rather as indicative of the scope intended to be given to the principal clauses, than as founded upon any reasons specially applicable to the natural products of the country as distinct from other property. It is a case to which the maxim, *expressio unius exclusio est alterius,* does not apply.

The exception was undoubtedly inserted from abundant caution, to prevent a misconstruction of the previous clause authorizing the taxation of trustees and agents for the property in their hands, and not because the legislature intended to discriminate between the products of agricultural and other kinds of labor. It shows that it was no part of the policy of the legislature, when that act was passed, to compel the citizens of other states to contribute to the support of our government, simply because they send a portion of the products of their industry to this state to be sold. It is clear, therefore, that the property of the relators could not have been taxed to their agent under the law of 1851, and I see no reason to suppose that it was intended by the law of 1855 to adopt a different policy in respect to property so situated. My conclusion therefore is, that the judgment of the supreme court should be reversed, and that the proceedings should be remitted, with instructions to cause the name of the relator to be erased from the assessment roll, and the corresponding tax to be cancelled.